**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

MICHELLE BROWN,
 Petitioner-Defendant,

v.                  Civil Action No. 3:14-cv-104
                   Criminal Action No. 3:13-cr-46
                   (Judge Groh)

UNITED STATES OF AMERICA,
 Respondent-Plaintiff.

## REPORT AND RECOMMENDATION/OPINION

### I. INTRODUCTION

On September 16, 2014, Michelle Brown ("Petitioner'), proceeding *pro se*, filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. (Civil Action No. 3:14-cv-104, Docket No. 1; Criminal Action No. 3:13-cr-46, Docket No. 44.) On September 22, 2014, the undersigned entered an Order directing the Government to respond to Petitioner's motion. (Docket No. 48.)[1] After receiving an extension of time, the Government filed its response on November 10, 2014. (Docket No. 61.) Petitioner filed a reply on December 5, 2014. (Docket No. 64.) This matter is now before the undersigned for a Report and Recommendation pursuant to Local Rule of Prisoner Litigation Procedure 2.

### II. FACTS

*A. Conviction and Sentence*

On October 1, 2013, the Grand Jury returned a nine-count Indictment against Petitioner, charging her with various drug-related offenses. (Docket No. 1.) On December 5, 2013, Petitioner signed a written plea agreement in which she agreed to plead guilty to Count Six of the Indictment,

---

[1] From this point, all docket numbers refer to entries in Criminal Action 3:13-cr-46.

charging her with distribution of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) & 841(b)(1)(C). (Docket No. 30.) In the agreement, the parties stipulated that Petitioner's relevant conduct involved 40.71 grams of cocaine base. (Id. at 4.) Petitioner waived her right to appeal and collaterally attack her sentence. Specifically, Petitioner's plea agreement contained the following language concerning her waiver:

> The defendant is aware that Title 18, United States Code, Section 3742 affords her the right to appeal the sentence imposed. Acknowledging all this, the defendant knowingly makes the following waiver of her appellate rights in exchange for the concessions made by the United States in this Plea Agreement: (1) The defendant knowingly waives the right to appeal her sentence within the maximum provided in the statute of conviction (or the manner in which that sentence was determined) on the grounds set forth in Title 18, United States Code, Section 3742 or on any ground whatever, in exchange for the concessions made by the United States in this plea agreement; and (2) the defendant also waives her right to challenge his [sic] sentence, or the manner in which it was determined, in any collateral attack, including, but not limited to, a motion brought under Title 28, United States Code, Section 2255.

(Id. at 5.)

Petitioner appeared before United States Magistrate Judge James Seibert on December 10, 2013, in order to enter her plea of guilty. (Docket No. 56.) At the time of her plea, Petitioner was thirty-four (34) years old, had completed high school, and had completed some college. (Id. at 4:6-10.) Petitioner had never been treated for either mental illness or addiction to drugs or alcohol. (Id. at 4:11-16.) Subsequently, the following colloquy occurred:

> THE COURT: Do you understand under the terms of the plea agreement you give up the right to appeal the conviction and sentence, and the right to file a habeas corpus petition attacking the sentence and conviction?
>
> THE DEFENDANT: Yes.
>
> THE COURT: These are really important, so I'm going to go over them with you again. Everybody who is convicted in federal court has the right to appeal the conviction to the Circuit Court down in Richmond. Three Judges there then look

> back at what happened up here and determine if it was done right or wrong. You're giving up that right. Do you understand that?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Everybody convicted in federal court also has the right to file a petition for habeas corpus, sometimes called a 2255, that says: I was wrongfully convicted and wrongfully sentenced. In this case you're giving up the right to file that writ of habeas corpus. Do you understand that?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Mr. Kratovil, do you believe the defendant fully understands these important rights she's waiving?
>
> MR. KRATOVIL: I do, Your Honor. I have explained them to her in detail. We have had discussions, both in my office and at the jail, and I think she understands.

(Id. at 10:20-11:21.)

Petitioner confirmed her understanding that the written plea agreement contained the full agreement between herself and the Government. (Id. at 12:4-7.) When asked, Petitioner further understood that the Court was not bound by the stipulation as to relevant conduct, and that she would not have the right to withdraw her guilty plea if the Court did not accept the stipulation. (Id. at 15:25-16:4.) Petitioner also stated that her counsel had adequately represented her and that there was nothing that he had not done that she had asked him to do. (Id. at 21:10-15.) The Court reviewed all the rights Petitioner was foregoing by entering a plea of guilty. (Id. at 16:19-18:16.) Based on that review, the Court determined that Petitioner understood the consequences of her plea of guilty. (Id. at 18:15-16.) During the hearing, the Government presented the testimony of West Virginia State Police Sergeant Tom Kearns to establish a factual basis for the plea. (Id. at 18:24-20-4.)

After hearing Sergeant Kearns' testimony, Petitioner advised the Court that she was guilty of Count Six of the Indictment. (Id. at 20:12-15.) Additionally, Petitioner testified under oath that

3

no one had attempted to force her to plead guilty and that her plea was not the result of any promises other than those contained in the plea agreement. (Id. at 20:16-24.) In conclusion, Magistrate Judge Seibert found that Petitioner was competent to make a plea of guilty, that she had "full knowledge and understanding" of the consequences of entering a plea of guilty; and that there was a basis in fact for her plea. (Id. at 21:23-22:3.) Petitioner did not object to that finding.

Petitioner appeared before United States District Judge Gina M. Groh for sentencing on March 21, 2014. (Docket No. 57.) Judge Groh announced that Petitioner's base offense level was 26, because her relevant conduct involved at least 28 grams but less than 112 grams of cocaine base. (Id. at 5:7-9.) Petitioner received three levels of reduction for acceptance of responsibility, bringing her to a total offense level of 23. (Id. at 5:10-16.) Such offense level called for 57 to 71 months of incarceration. (Id. at 5:18-20.) Judge Groh sentenced Petitioner to 57 months of incarceration, to be followed by three (3) years of supervised release. (Id. at 14:1-15:1.)

**B.    *Direct Appeal***

Petitioner did not file a direct appeal.

**C.    *Federal Habeas Corpus***

**1.    Petitioner's Motion**

In her motion, Petitioner raises the following claims:

1.   Ineffective assistance of counsel following her plea hearing; and

2.   Court error by "imposing a sentence in light of a fundamental sentencing error."

(Docket No. 44 at 4-5.)

**2.    Government's Response**

In its response, the Government asserts that Petitioner's motion should be denied because:

1. Petitioner has not demonstrated ineffective assistance of counsel; and

2. Petitioner is precluded from raising her claim of Court error in her motion.

(Docket No. 61 at 5-11.)

### 3. Petitioner's Reply

In her reply, Petitioner asserts that the Court erred by using "allegedly unconstitutional prior convictions as the basis to enhance her sentence as a career offender." (Docket No. 64 at 2.) She also reiterates her arguments of ineffective assistance of counsel. (Id. at 4-5.)

## III. ANALYSIS

### A. *Applicable Law Regarding Petitioner's Waiver*

#### 1. Law Governing Waivers of Direct Appeal and Collateral Attack Rights

"[T]he guilty plea and the often concomitant plea bargain are important components of this country's criminal justice system. Properly administered, they can benefit all concerned." Blackledge v. Allison, 431 U.S. 63, 71 (1977). However, the advantages of plea bargains are only secure when "dispositions by guilty plea are accorded a great measure of finality." Id. The Fourth Circuit has recognized that the Government often secures waivers of both appellate and collateral attack rights "from criminal defendants as part of their plea agreement." United States v. Lemaster, 403 F.3d 216, 220 (4th Cir. 2005).

Courts have routinely held that "defendants can waive fundamental constitutional rights such as the right to counsel, or the right to a jury trial." United States v. Marin, 961 F.2d 493, 496 (4th Cir. 1992). Specifically, the Fourth Circuit has held that "a waiver-of-appeal-rights provision in a valid plea agreement is enforceable against the defendant so long as it is 'the result of a knowing and intelligent decision to forgo the right to appeal.'" United States v. Attar, 38 F.3d 727, 731 (4th Cir.

1994) (citations omitted). However, a defendant still retains the right to appellate review on limited grounds, such as when a sentence above the maximum penalty provided by statute is imposed or when a sentence is imposed based on a constitutionally impermissible factor. Id. at 732. Furthermore, the Attar court recognized that a defendant cannot "fairly be said to have waived his right to appeal his sentence" on the ground that he was wholly deprived of counsel during sentencing procedures. Id.

Eleven years later, the Fourth Circuit determined there was no reason to distinguish between waivers of appellate rights and waivers of collateral attack rights. Lemaster, 403 F.3d at 220 n.2. The Fourth Circuit noted that all courts of appeals to have considered the issue have "held that the right to attack a sentence collaterally may be waived so long as the waiver is knowing and voluntary." Id. at 220. The Lemaster court did not address whether the same exceptions that were noted by the Attar court apply to a waiver of collateral attack rights, but it did note that it saw "no reason to distinguish" between the two. Id. at 220 n.2; see also United States v. Cannady, 283 F.3d 641, 645 n.3 (4th Cir. 2000) (collecting cases where the court has determined that waivers of § 2255 rights are generally valid).

The Fourth Circuit has not yet issued a binding decision defining the scope of collateral attack waivers and so has not yet imposed on this Court a standard governing "the extent to which an ineffective assistance of counsel claim can be precluded by a § 2255 waiver." Braxton v. United States, 358 F. Supp. 2d 497, 502 (W.D. Va. 2005).[2] However, several courts have held that collateral attack waivers should be subjected to the same conditions and exceptions applied to waivers of direct

---

[2]The Fourth Circuit issued an unpublished per curiam opinion affirming the Western District of Virginia's ruling in Braxton. See United States v. Braxton, 214 F. App'x 271 (4th Cir. 2007) (per curiam).

appellate rights. Cannady, 283 F.3d at 645 n.3 (collecting cases). Furthermore, most courts of appeals have determined that waivers of collateral attack rights encompass claims "that do not call into question the validity of the plea or the § 2255 waiver itself, or do not relate directly to the plea agreement or the waiver." Braxton, 358 F. Supp. 2d at 503.

### 2. Law Governing Whether a Waiver is Knowing and Intelligent

The Fourth Circuit has held that the determination of whether a waiver of appellate and collateral attack rights is "knowing and intelligent" "depends 'upon the particular facts and circumstances surrounding [its making], including the background, experience, and conduct of the accused.'" Attar, 38 F.3d at 731 (quoting United States v. Davis, 954 F.2d 182, 186 (4th Cir. 1992)). This determination is often made upon reviewing the "adequacy of the plea colloquy" and determining, in particular, "whether the district court questioned the defendant about the appeal waiver." United States v. Blick, 408 F.3d 162, 169 (4th Cir. 2005). However, an ultimate decision is "evaluated by reference to the totality of the circumstances." United States v. General, 278 F.3d 389, 400 (4th Cir. 2002).

### B. *Petitioner's Claim of Sentencing Court Error*

#### 1. **Petitioner's Claim Is Barred By Her Waiver**

As noted above, Petitioner waived her right to directly appeal or collaterally attack her sentence or the manner in which it was determined in any manner whatsoever as long as it was within the statutory maximum. (Docket No. 30 at 5.) In her motion, Petitioner now claims that the Court erred by imposing a mandatory minimum sentence in violation of Alleyne v. United States, 133 S. Ct. 2151 (2013). (Docket No. 44-1 at 5-8.)

A defendant's sworn representations made at a plea hearing "carry a strong presumption of

7

verity" and "constitute a formidable barrier against any subsequent collateral proceedings." Blackledge, 431 U.S. at 74. Accordingly, "in the absence of extraordinary circumstances, . . . allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always 'palpably incredible' and 'patently frivolous or false.'" Lemaster, 403 F.3d at 221 (citations omitted).

After reviewing the record, the undersigned finds that Petitioner's waiver of her right to file a motion pursuant to 28 U.S.C. § 2255 was knowing and intelligent. See Attar, 38 F.3d at 731. At the Rule 11 colloquy, Petitioner testified that she was thirty-four (34) years old, had completed high school, and had completed some college. (Docket No. 56 at 4:6-10.) Petitioner had never been treated for either mental illness or addiction to drugs or alcohol. (Id. at 4:11-16.) Subsequently, the following colloquy occurred:

> THE COURT: Do you understand under the terms of the plea agreement you give up the right to appeal the conviction and sentence, and the right to file a habeas corpus petition attacking the sentence and conviction?
>
> THE DEFENDANT: Yes.
>
> THE COURT: These are really important, so I'm going to go over them with you again. Everybody who is convicted in federal court has the right to appeal the conviction to the Circuit Court down in Richmond. Three Judges there then look back at what happened up here and determine if it was done right or wrong. You're giving up that right. Do you understand that?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Everybody convicted in federal court also has the right to file a petition for habeas corpus, sometimes called a 2255, that says: I was wrongfully convicted and wrongfully sentenced. In this case you're giving up the right to file that writ of habeas corpus. Do you understand that?
>
> THE DEFENDANT: Yes.

> THE COURT: Mr. Kratovil, do you believe the defendant fully understands these important rights she's waiving?
>
> MR. KRATOVIL: I do, Your Honor. I have explained them to her in detail. We have had discussions, both in my office and at the jail, and I think she understands.

(Id. at 10:20-11:21.)

Petitioner also testified that she had reviewed the plea agreement with her attorney before signing it. (Id. at 11:23-25.) At the conclusion of the plea colloquy, Magistrate Judge Seibert found that Petitioner was competent and capable of entering an informed plea, that she made her plea freely and voluntarily, and that she understood the consequences of her plea. (Id. at 21:23-22:3.) Therefore, the undersigned finds that Petitioner knowingly and intelligently waived her right to collaterally attack her sentence as part of her plea agreement.

### 2. Petitioner's Claim Is Procedurally Defaulted

The undersigned has already found that Petitioner waived her right to collaterally attack her sentence as part of her plea agreement; nevertheless, he has considered Petitioner's claim on its merits. As an initial matter, in its response, the Government asserts that Petitioner's claim of sentencing error is procedurally defaulted because she failed to raise it in a direct appeal. (Docket No. 61 at 9-10.)

Typically, the failure to raise non-constitutional issues on direct appeal results in their being deemed waived in a § 2255 motion. See United States v. Emanuel, 869 F.2d 795, 796 (4th Cir. 1989). However, "[w]here a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' . . . or that he is 'actually innocent.'" Bousley v. United States, 523 U.S. 614, 622 (1998) (internal citations omitted). To establish cause, a movant must demonstrate

9

"something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel." United States v. Mikalajunas, 186 F.3d 490, 493 (4th Cir. 1999). Actual prejudice is then shown by demonstrating that the error worked to a petitioner's "'actual and substantial disadvantage,'" rather than just creating a possibility of prejudice. See Satcher v. Pruett, 126 F.3d 561, 572 (4th Cir. 1997) (quoting Murray v. Carrier, 477 U.S. 478, 494 (1986)). To establish actual innocence, a petitioner must show that "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." Bousley, 523 U.S. at 623 (citations omitted) (internal quotation marks omitted). Usually, a petitioner "must demonstrate actual factual innocence of the offense of conviction;" "this standard is not satisfied by a showing that a petitioner is legally, but not factually, innocent." Mikalajunas, 186 F.3d at 494.

Although she does not explicitly say so, Petitioner appears to assert that her procedural default should be excused because of counsel's alleged ineffectiveness in raising the claim she now asserts. However, the Supreme Court has held that "the mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default." Smith v. Murray, 477 U.S. 527, 535 (1986) (citation and internal quotation marks omitted). Accordingly, Petitioner has failed to demonstrate cause for her procedural default.

Furthermore, Petitioner cannot demonstrate actual innocence to excuse her procedural default. The Fourth Circuit has held that "ordinary misapplication of the guidelines does not amount to a miscarriage of justice." United States v. Mikalajunas, 186 F.3d 490, 496 (4th Cir. 1999). Generally, "actual innocence applies in non-capital sentencing only in the context of eligibility for

application of a career offender or other habitual offender guideline provision."[3] Id. at 495. If this were not so, the Fourth Circuit reasoned, "whenever a movant is prejudiced by the misapplication of a sentencing guideline and does not raise the error on direct appeal, a federal court may nevertheless correct the error during a § 2255 proceeding, entirely eliminating the cause portion of the cause and prejudice requirement." Id. at 494-95. Here, Petitioner's sentencing claims do not involve a challenge to the application of a career offender or other habitual offender guideline provision. Accordingly, Petitioner cannot demonstrate actual innocence to excuse her procedural default. Nevertheless, the undersigned has considered Petitioner's claim on its merits below.

### 3. Ground Two: Sentencing Court Error

As noted above, Petitioner appears to claim that the sentencing Court erred by imposing a mandatory minimum sentence in violation of Alleyne. In Alleyne, the Supreme Court held that "any fact that increases the mandatory minimum is an 'element' that must be submitted to the jury" and "found beyond a reasonable doubt." 133 S. Ct. 2151, 2155 (2013). However, the undersigned notes that Petitioner was not subject to any mandatory minimum sentence. (Docket No.56 at 6:12-17; 13:11-13.) Furthermore, the undersigned finds that Alleyne would also not apply to Petitioner's case because, by entering into the plea agreement, Petitioner waived her right to a jury trial. By doing so, Petitioner "waived h[er] right for a jury to make sentencing determinations beyond a reasonable doubt." Newlen v. United States, Nos. 5:13-cv-112, 5:11-cr-24, 2014 WL 1787779, at *3 (N.D. W.

---

[3] Recently, the Fourth Circuit held that "an erroneous application of the career offender enhancement amounts to a fundamental miscarriage of justice that is cognizable on collateral review." Whiteside v. United States, 748 F.3d 541, 551 (4th Cir. 2014). However, the undersigned notes that the finality of the Whiteside decision is uncertain, as the Fourth Circuit has granted a request to rehear the appeal *en banc*. Whiteside v. United States, No. 13-7152, 2014 WL 3377981 (4th Cir. July 10, 2014).

Va. May 5, 2014) (alteration in original); see also Grantham v. United States, Nos. 5:13-cv-104, 5:10-cr-37, 2014 WL 296937, at *3-4 (N.D. W. Va. Jan. 27, 2014) (finding same). Accordingly, to the extent Petitioner is raising an Alleyne argument, the argument is meritless.

In her reply, Petitioner argues that the Court "should not have counted the prior West Virginia uncounseled convictions, when sentencing her." (Docket No. 64 at 1.) She claims that "allegedly unconstitutional prior convictions" were used to "enhance her sentence as a career offender." (Id.) As an initial matter, the Court deems this issue to be waived, as Petitioner raised it for the first time in her reply. See Moseley v. Branker, 550 F.3d 312, 325 n.7 (4th Cir. 2008) ("As a general rule, arguments not specifically raised and addressed in opening brief, but raised for the first time in reply, are deemed waived."). Even so, Petitioner was never sentenced as a career offender, rendering her argument meritless.

## C. Petitioner's Ineffective Assistance of Counsel Claims

### 1. Standard Governing Claims of Ineffective Assistance of Counsel

The Supreme Court has set forth a two-prong test for determining whether a convicted defendant's claim of ineffective assistance of counsel warrants the reversal of his conviction. Strickland v. Washington, 466 U.S. 668, 687 (1984). First, "the defendant must show that counsel's performance was deficient." Id. Second, "the defendant must show that the deficient performance prejudiced the defense." Id. These two prongs are commonly referred to as the "performance" and "prejudice" prongs. Fields v. Att'y Gen. of Md., 956 F.2d 1290, 1297 (4th Cir. 1992).

To satisfy the "performance" prong, the defendant must demonstrate that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." Strickland, 466 U.S. at 687. However, a reviewing court does not "grade" trial

counsel's performance, and there is a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance." Carter v. Lee, 283 F.3d 240, 249 (4th Cir. 2002). Essentially, the reviewing court must not "second-guess" counsel's performance and must "evaluate counsel's performance 'from counsel's perspective at the time.'" Hunt v. Lee, 291 F.3d 284, 289 (4th Cir. 2002). Furthermore, the standard of reasonableness is objective, not subjective. See Strickland, 466 U.S. at 688.

To satisfy the "prejudice" prong, the defendant must demonstrate that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. at 687. Therefore, if counsel's errors have no effect on the judgment, the conviction should not be reversed. See id. at 691. A defendant who alleges ineffective assistance of counsel following a guilty plea has an even higher burden: "he must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); Hooper v. Garraghty, 845 F.2d 471, 475 (4th Cir. 1988). The Fourth Circuit has recognized that if a defendant "cannot demonstrate the requisite prejudice, a reviewing court need not consider the performance prong." Fields, 956 F.2d at 1297.

2. **Petitioner's Claims of Ineffective Assistance Following Entry of Guilty Plea**

Petitioner raises three claims of ineffective assistance following entry of her guilty plea. First, she argues that counsel was ineffective when he failed to "challenge the PSR's computations of petitioner's offense." (Docket No. 44-1 at 3.) Petitioner also asserts that counsel was ineffective for failing to "object to the sentencing calculation error of prior convictions recidivist enhancements." (Id. at 4.) Finally, Petitioner claims that counsel was ineffective for failing to file an appeal. (Docket No. 44 at 4.)

13

As to ineffective assistance of counsel claims raised regarding an attorney's action, or lack thereof, after the plea colloquy the Fourth Circuit has stated that the right to challenge a sentence on the ground that "the proceedings following entry of the guilty plea–including both the sentencing hearing itself and the presentation of the motion to withdraw their pleas–were conducted in violation of their Sixth Amendment right to counsel" is not waived by a general waiver of appellate rights contained in the plea agreement. United States v. Attar, 38 F.3d 727, 732-33 (4th Cir. 1994). Therefore, "upon first blush it appears that [such] claims arising after the guilty plea and/or during sentencing are not barred by a general waiver of appeal rights." Oden v. United States, Civil No. 3:13-cv-93, Criminal No. 3:11-cr-56, 2014 WL 2462993, at *8 (N.D. W. Va. June 2, 2014.) Accordingly, Petitioner's claims that counsel was ineffective subsequent to her plea hearing are not barred by her waiver.

### a. Counsel Failed to Object to Amount of Drugs Sold

Petitioner first argues that counsel "failed to challenge the PSR's computations of petitioner's offense." (Docket No. 44-1 at 3.) Specifically, Petitioner claims:

> Here where the sale was completed and there was no evidence that the amount of 28 grams but less than 112 grams of cocaine actually sold did not represent the "scale of the offense," counsel plainly should have objected that the petitioner's offense level was squarely covered by Application Note 12 and was improperly calculated at 23, which does not correspond with the actual amount of cocaine sold by Petitioner Brown.

(Id. at 4.)

As an initial matter, it has not escaped the undersigned's attention that Petitioner does not assert that but for counsel's alleged ineffectiveness, "[s]he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59 (alteration in original). As noted above, Petitioner takes issue with the calculation of her relevant conduct, asserting that it does not

14

correspond with the actual amount of cocaine base that she sold. Accordingly, Petitioner's claim fails on this basis. Nevertheless, the undersigned has considered Petitioner's claim notwithstanding this failure.

As noted in Petitioner's Presentence Investigation Report ("PSR"), the 2013 Sentencing Guidelines were used to fashion Petitioner's sentence. (Docket No. 40 at 9.) At that time, the base offense level for offenses involving at least twenty-eight (28) grams but less than 112 grams of cocaine base was 26. U.S.S.G. § 2D1.1(c)(7) (2013). "Types and quantities of drugs not specified in the count of conviction may be considered in determining the offense level." Id., app. n.5. Furthermore,

> with respect to offenses involving contraband (including controlled substances), the defendant is accountable for all quantities of contraband with which he was directly involved and, in the case of a jointly undertaken criminal activity, all reasonably foreseeable quantities of contraband that were within the scope of the criminal activity that he jointly undertook.

U.S.S.G. § 1B1.3 app. n.2 (2013).

Even if the undersigned were to accept Petitioner's characterization of counsel's actions as falling outside "the wide range of reasonable professional assistance," Carter, 283 F.3d at 249, the undersigned finds that Petitioner cannot demonstrate that she suffered any prejudice from counsel's failure to object to the calculated relevant conduct. First, Petitioner stipulated to her relevant conduct in her written plea agreement. (Docket No. 30 at 4.) When asked during her plea colloquy, Petitioner further understood that the Court was not bound by the stipulation as to relevant conduct, and that she would not have the right to withdraw her guilty plea if the Court did not accept the stipulation. (Docket No. 56 at 15:25-16:4.) Any objection to the stipulated relevant conduct would have directly contradicted the terms of her agreement.

Furthermore, Petitioner has provided no statement as to what she believes her relevant conduct should have been. The Government submitted the following calculations for inclusion in Petitioner's PSR:

> The United States anticipates that the defendant's drug weight would be calculated as follows:
>
> 3.61 grams crack [total buy weight]
>
> 15.80 grams crack [from the residence]
>
> + 21.30 grams crack ['low side' historical][=$100.00/.71 grams/purchase x 30 purchases]
>
> Total= 40.71 grams crack

(Docket No. 40 at 8.) The PSR further noted that "[a]ccording to the probation officer's independent determination of the facts, the Government's written statement appears to be an accurate representation of the defendant's offense conduct." (Id.)

Petitioner offers no proof, other than her own claims, that this calculation was incorrect. Accordingly, the Court properly applied the correct base offense level, and so Petitioner cannot demonstrate the requisite prejudice for his claim. See Strickland, 466 U.S. at 691. Accordingly, the undersigned "need not consider the performance prong." Fields, 956 F.2d at 1297. Therefore, the undersigned recommends that Petitioner's first claim of ineffective assistance of counsel be denied.

### b. Counsel Failed to Object to Recidivist Enhancements

As noted above, Petitioner also claims that counsel was ineffective for failing to object to the use of her prior convictions as "recidivist enhancements." (Docket No. 44-1 at 4.) However, as discussed above, Petitioner's sentence was enhanced based upon recidivism. Accordingly, counsel cannot be ineffective for failing to raise a meritless claim. See United States v. Kilmer, 167 F.3d

889, 893 (5th Cir. 1999) (stating that "[a]n attorney's failure to raise a meritless argument . . . cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue"); Moore v. United States, 934 F. Supp. 724, 731 (E.D. Va. 1996) (noting that "there can be no claim of ineffective assistance where, as here, counsel is alleged to have failed to raise a meritless argument"). Accordingly, the undersigned recommends that this claim be denied as well.

### c. Failure to File an Appeal

As her last claim of ineffective assistance of counsel, Petitioner claims that counsel failed to file an appeal. (Docket No. 44 at 1.) Elsewhere, she states that she was told by counsel that she could not appeal. (Id.) Despite the fact that a defendant can waive her right to an appeal, the Fourth Circuit Court of Appeals has held that "a criminal defense attorney's failure to file a notice of appeal when requested by his client deprives the client of his Sixth Amendment right to the assistance of counsel, notwithstanding that the lost appeal may not have had a reasonable probability of success." United States v. Peak, 992 F.2d 39, 42 (4th Cir. 1993). The Court noted:

> Persons convicted in federal district courts have a right to a direct appeal. Coppedge v. United States, 369 U.S. 438, 82 S. Ct. 917, 8 L.E. 2d 21 (1962). In addition, the Sixth Amendment right to counsel extends to the direct appeal, Douglas v. California, 372 U.S. 353 (1963), and it obligates the attorney to file the appeal and identify possible issues for the court even if, in the attorney's opinion, those issues are not meritorious, Anders v. California, 386 U.S. 738 (1967).

Id. at 41. Furthermore, in Roe v. Flores-Ortega, 52 U.S. 470 (2000), the Supreme Court recognized that "[i]f counsel has consulted with the defendant, the question of deficient performance is easily answered. Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal." Id. at 478. Additionally, the Fourth Circuit maintains that counsel must file an appeal if asked, "even if doing so would be contrary to

17

the plea agreement and harmful to the client's interests." United States v. Poindexter, 492 F.3d 263, 273 (4th Cir. 2007).

Because the Government was not privy to the confidential exchanges that took place between Petitioner and her attorney, and because the Government has not provided any information from Petitioner's attorney regarding what instructions, if any, he received regarding an appeal, Petitioner's motion and the Government's response do not conclusively establish that petitioner is not entitled to relief. Accordingly, the undersigned finds that an evidentiary hearing is necessary to determine whether Petitioner requested that counsel file an appeal and whether counsel ignored or refused to follow such instruction. See 28 U.S.C. § 2255(b) (providing in pertinent part that "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto"); see also United States v. Witherspoon, 231 F.3d 923, 925-26 (4th Cir. 2000).

## IV. RECOMMENDATION AND ORDER

For the foregoing reasons, the undersigned recommends that Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Civil Action No. 3:14-cv-104, Docket No. 1; Criminal Action No. 3:13-cr-46, Docket No. 44) be **DENIED** and **DISMISSED WITH PREJUDICE WITH THE EXCEPTION** of Petitioner's claim that counsel failed to file an appeal.

As to Petitioner's claim that counsel failed to file an appeal, the undersigned **SCHEDULES** an evidentiary hearing for **Wednesday, February 4, 2015, at 10:00 a.m.**, at the Clarksburg point of holding court. Petitioner shall appear by telephone from her place of incarceration. The United

States Attorney is **DIRECTED** to make James Kratovil, trial counsel for Petitioner, available to testify during the hearing. The Federal Public Defender is **DIRECTED** to appoint counsel to represent Petitioner for the hearing and all subsequent proceedings related to her claim that trial counsel failed to file an appeal on her behalf.

Within **fourteen (14) days** after being served with a copy of this report and recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the Honorable Gina M. Groh, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Court directs the Clerk of the Court to provide a copy of this Report and Recommendation to all counsel of record as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia, as well as to the Federal Public Defender for purposes of appointment of counsel. The Court further directs the Clerk of the Court to mail a copy of this Report and Recommendation to the *pro se* Petitioner Michelle Brown.

DATED: December 18, 2014

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE