# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**MICHELLE BROWN,**
    **Petitioner-Defendant,**

v.                                          **Civil Action No. 3:14-cv-104**
                                           **Criminal Action No. 3:13-cr-46**
                                           **(Judge Groh)**

**UNITED STATES OF AMERICA,**
    **Respondent-Plaintiff.**

## REPORT AND RECOMMENDATION

This case came before the Court for an evidentiary hearing on February 19, 2015. Petitioner, a federal inmate, appeared by telephone from her place of incarceration. Appearing in person were Katy Cimino, on behalf of Petitioner, and David Perri, Assistant United States Attorney ("AUSA"), on behalf of the United States. The Court heard testimony from Mr. James Kratovil, Petitioner's former defense counsel, who appeared by telephone from Martinsburg, West Virginia.

## I. Procedural History

Petitioner initiated this case by filing a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence on September 16, 2014. (Docket No. 44.)[1] In her motion, Petitioner raised several grounds for relief. After being ordered to answer, the Government filed a response. (Docket No. 61.) On December 18, 2014, the undersigned issued a Report and Recommendation ("R&R") recommending that all except one of Petitioner's claims be denied and dismissed. However, an evidentiary hearing was scheduled as to Petitioner's claim that despite her request to counsel that counsel file an appeal on her behalf, counsel failed to do so.

## II. Evidentiary Hearing

Mr. Kratovil testified that he represented Petitioner at the trial level. Her criminal case arose

---

[1] All docket numbers refer to entries in Criminal No. 3:13-cr-46 unless otherwise stated.

from the Martinsburg, West Virginia, point of holding court. Mr. Kratovil testified that he had no difficulties communicating legal concepts to her; he characterized Petitioner as intelligent, well-spoken, and very communicative. He characterized the attorney-client relationship as a "nice, professional relationship." Petitioner was very forthcoming as to his requests for information. For example, Petitioner provided Mr. Kratovil with many documents regarding her progress in life post-arrest. Some of these documents were certificates showing that Petitioner had been working towards her associates degree.

During one attorney-client meeting, Mr. Kratovil reviewed the offered plea agreement word-for-word with Petitioner. Petitioner's plea agreement called for a complete waiver of her appellate rights if she received a sentence within the statutory maximum. During that meeting, he advised Petitioner that if she signed the plea agreement, she would be waiving her right to appeal. Petitioner decided to sign the plea agreement.

Prior to sentencing, Mr. Kratovil determined that he would request that the Court depart from the Guidelines and give Petitioner a sentence of probation. Mr. Kratovil thought that Petitioner was a good candidate for probation because she was smart, had a child to raise, and had made significant efforts to "straighten her life out." He had more than one discussion with Petitioner about the role of the Guidelines and how they were no longer mandatory. Mr. Kratovil advised Petitioner that her sentence would be at the discretion of United States District Judge Gina M. Groh. He testified that during her change of plea hearing, now-retired United States Magistrate Judge David Joel also advised Petitioner that no one could predict her sentence, and that her sentence would be at Judge Groh's discretion.

Petitioner appeared before Judge Groh for sentencing in March 2014. At that time, Mr. Kratovil requested that the Court impose probation. He testified that he was "surprised" when Judge Groh

2

imposed a sentence of 57 months of incarceration. Judge Groh ordered that Petitioner self-report by a certain date, and advised Petitioner of her right to appeal notwithstanding her waiver. Petitioner did not say much, if anything, about her sentence; she did appear to be upset about the sentence after it was imposed. Mr. Kratovil told her that he was sorry and that he thought the sentence was greater than he thought it would be. The sentence imposed was well within the statutory maximum sentence for the offense of conviction.

Immediately after the sentencing hearing, when they were both still seated at counsel table, Mr. Kratovil told Petitioner that he did not believe that she had many appealable grounds. He also reminded her that because she had waived her right to appeal pursuant to her plea agreement, an appeal would probably not have much effect. He asked her if she wished to appeal, and she replied that she did not. Mr. Kratovil then had Petitioner sign a document stating that she was waiving her right to appeal. He had written out that document after Judge Groh imposed sentence and while he and petitioner sat at counsel table. The document was dated "3/21/14" and stated "I waive my right to appeal." (Docket No. 75-1.) Petitioner's signature appears on that document. (Id.) Mr. Kratovil testified that his typical practice is to have clients who do not wish to appeal sign such a document, and that Petitioner understood what she was signing.

Mr. Kratovil testified that he could not recall any communication with Petitioner after her sentencing hearing. He thought that he received a letter from the United States Marshal Service regarding her designation to the Bureau of Prisons. If he had received such a letter, he testified that he would have either mailed Petitioner a copy or called her about her designation.

Mr. Kratovil testified that had Petitioner requested an appeal, it would have been his opinion that Petitioner would have not had a viable appeal. However, he would have filed a brief pursuant to

3

Anders v. California, 388 U.S. 738 (1967),[2] on Petitioner's behalf. Mr. Kratovil testified that he has never failed or refused to file an appeal on behalf of a client. He testified that the decision whether to appeal lies with the client, not with him. Mr. Kratovil further testified that he has filed Anders briefs in the years that he has been practicing as a defense attorney.

Petitioner did not testify or offer any evidence except that which was presented through Mr. Kratovil's testimony. Petitioner was advised by the Court that she could testify if she wanted.

### III.   Analysis

The sole issue to be addressed is whether Petitioner requested that or instructed her attorney to file an appeal. Petitioner bears the burden of proving her claim by a preponderance of the evidence. Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958).

As a preliminary matter, the undersigned acknowledges that Petitioner waived her right to file an appeal as part of her plea agreement. As to whether such a waiver is valid, the Fourth Circuit has found that "a waiver-of-appeal-rights provision in a valid plea agreement is enforceable against the defendant so long as it is the result of a knowing and intelligent decision to forego the right to appeal." United States v. Attar, 38 F.3d 727, 731 (4th Cir. 1994). Whether a waiver is knowing and intelligent "depends upon the particular facts and circumstances surrounding [its making], including the

---

[2] In Anders, the Supreme Court held:

> [I]f counsel finds his [client's] case to be wholly frivolous [for appeal], after a conscientious examination of it, he should so advise the court and request permission to withdraw. That request must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal. A copy of counsel's brief should be furnished the indigent and time allowed him to raise any points that he chooses; the court–not counsel–then proceeds, after a full examination of all the proceedings, to decide whether the case is wholly frivolous.

Id. at 744.

background, experience, and conduct of the accused." Id.

After upholding the general validity of such a provision, the Fourth Circuit noted that even with such a provision, a defendant may obtain appellate review of certain limited grounds. Id. at 742. For example, the Court noted that a defendant "could not be said to have waived his right to appellate review of a sentence imposed in excess of the maximum penalty provided by statute or based on a constitutionally impermissible factor such as race." Id. Nor did the Court believe that a defendant "can fairly be said to have waived his right to appeal his sentence on the ground that the proceedings following the entry of the guilty plea were conducted in violation of the Sixth Amendment right to counsel." Id.

The Supreme Court has set forth a two-prong test for determining whether a convicted defendant's claim of ineffective assistance of counsel warrants the reversal of his conviction. Strickland v. Washington, 466 U.S. 668, 687 (1984). First, "the defendant must show that counsel's performance was deficient." Id. Second, "the defendant must show that the deficient performance prejudiced the defense." Id. These two prongs are commonly referred to as the "performance" and "prejudice" prongs. Fields v. Att'y Gen. of Md., 956 F.2d 1290, 1297 (4th Cir. 1992).

To satisfy the "performance" prong, the defendant must demonstrate that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." Strickland, 466 U.S. at 687. However, a reviewing court does not "grade" trial counsel's performance, and there is a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance." Carter v. Lee, 283 F.3d 240, 249 (4th Cir. 2002). Essentially, the reviewing court must not "second-guess" counsel's performance and must "evaluate counsel's performance 'from counsel's perspective at the time.'" Hunt v. Lee, 291 F.3d 284, 289 (4th Cir. 2002). Furthermore, the standard of reasonableness is objective, not subjective. See Strickland, 466 U.S. at 688.

To satisfy the "prejudice" prong, the defendant must demonstrate that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. at 687. Therefore, if counsel's errors have no effect on the judgment, the conviction should not be reversed. See id. at 691. The Fourth Circuit has recognized that if a defendant "cannot demonstrate the requisite prejudice, a reviewing court need not consider the performance prong." Fields, 956 F.2d at 1297.

Despite the fact that a defendant can waive her right to an appeal, the Fourth Circuit Court of Appeals has held that "a criminal defense attorney's failure to file a notice of appeal when requested by his client deprives the client of his Sixth Amendment right to the assistance of counsel, notwithstanding that the lost appeal may not have had a reasonable probability of success." United States v. Peak, 992 F.2d 39, 42 (4th Cir. 1993). The Court noted:

> Persons convicted in federal district courts have a right to a direct appeal. Coppedge v. United States, 369 U.S. 438, 82 S. Ct. 917, 8 L.E. 2d 21 (1962). In addition, the Sixth Amendment right to counsel extends to the direct appeal, Douglas v. California, 372 U.S. 353 (1963), and it obligates the attorney to file the appeal and identify possible issues for the court even if, in the attorney's opinion, those issues are not meritorious, Anders v. California, 386 U.S. 738 (1967).

Id. at 41.

Furthermore, in Roe v. Flores-Ortega, 52 U.S. 470 (2000), the Supreme Court recognized that "[i]f counsel has consulted with the defendant, the question of deficient performance is easily answered. Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal." Id. at 478. Additionally, the Fourth Circuit maintains that counsel must file an appeal if asked, "even if doing so would be contrary to the plea agreement and harmful to the client's interests." United States v. Poindexter, 492 F.3d 263, 273 (4th Cir. 2007). After an evidentiary hearing on whether counsel was instructed to file a notice of appeal, the Court is required to determine whether the defendant unequivocally instructed his attorney to file a notice of appeal, or

6

if his attorney was not so instructed, the Court will determine if the defendant has met his burden of showing that: (1) his attorney had a duty to consult under Roe v. Flores-Ortega; (2) his attorney failed to fulfill his consultation obligations; and (3) he was prejudiced by his attorney's failure to fulfill these obligations. Poindexter, 492 F.3d at 273.

Upon consideration of the record, the undersigned finds that Petitioner never requested that Mr. Kratovil file on appeal on her behalf. Rather, when asked by Mr. Kratovil if she wanted to appeal, Petitioner specifically replied that she did not. Mr. Kratovil's testimony is corroborated by the document that Petitioner signed immediately after her sentencing hearing, in which she agreed that she was waiving her right to appeal. (Docket No. 75-1.) Furthermore, Judge Groh advised Petitioner that she had fourteen (14) days "following entry of the judgment and commitment order" to file a notice of appeal. (Docket No. 57 at 20:19-23.) Mr. Kratovil never received any communication from Petitioner after the sentencing hearing, including communication regarding a desire to appeal her conviction and sentence.

It is well established that "counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think . . . that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." Flores-Ortega, 528 U.S. at 480. Here, however, the record is devoid of evidence showing that Petitioner even reasonably demonstrated an interest in appealing or requested that Mr. Kratovil file an appeal. Rather, when asked, Petitioner explicitly stated that she did not wish to file an appeal, and she put that in writing. Accordingly, the undersigned finds that Petitioner has not met her burden under Strickland, Flores-Ortega, or Poindexter. She has not demonstrated that counsel failed to perform in a professionally unreasonable manner by failing to follow express instructions regarding an appeal. To the contrary, the evidence is unequivocal that Mr. Kratovil consulted with her post sentencing relative to whether she wanted to appeal and was

7

told that she did not. Furthermore, even if Petitioner could prove that counsel was ineffective, she cannot prove prejudice. In her plea agreement, Petitioner agreed to waive her appellate rights with if the sentence imposed was within the statutory maximum, which it was. Accordingly, even if Mr. Kratovil had filed an appeal, it would not have succeeded. Poindexter, 492 F.3d at 273. Therefore, the undersigned recommends that Petitioner's claim that counsel failed to file an appeal be denied

### IV. Recommendation

For the foregoing reasons, the undersigned recommends that Petitioner's claim that counsel failed to file an appeal, contained in her Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence be **DENIED** and **DISMISSED WITH PREJUDICE**.

Within **fourteen (14) days** after being served with a copy of this report and recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the Honorable Gina M. Groh, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Court directs the Clerk of the Court to provide an electronic copy of this Report and Recommendation to counsel of record.

DATED: February 19th, 2015

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE